UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| RYAN O'DELL, | : |
| | : |
| Plaintiff, | : Civil Action No. 1:21-cv-00575 |
| | : |
| v. | : |
| | : **COMPLAINT FOR VIOLATIONS OF** |
| VERSO CORPORATION, DR. ROBERT K. | : **SECTIONS 14(a) AND 20(a) OF THE** |
| BECKLER, RANDY J. NEBEL, MARVIN | : **SECURITIES EXCHANGE ACT OF** |
| COOPER, NANCY M. TAYLOR, JEFFREY | : **1934** |
| E. KIRT, | : |
| | : **JURY TRIAL DEMANDED** |
| Defendants. | : |

---

Ryan O'Dell ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against Verso Corporation ("Verso or the "Company") and the members Verso board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), in connection with the proposed acquisition of Verso by affiliates of BillerudKorsnäs AB ("BillerudKorsnäs").

2. Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A (the "Proxy Statement") to be filed on January 21, 2022 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders. The Proxy

Statement recommends that Company stockholders vote in favor of a proposed transaction whereby West Acquisition Merger Sub Inc. ("Merger Sub") will merge with and into Verso, with Verso continuing as the surviving corporation and a wholly owned direct subsidiary of BillerudKorsnäs Inc. ("Parent") and wholly owned indirect subsidiary of BillerudKorsnäs (the "Proposed Transaction").  Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement") each Verso common share issued and outstanding will be converted into the right to receive $27.00 (the "Merger Consideration").

3. As discussed below, Defendants have asked Verso stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act.  Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the Company's financial forecasts and financial analyses conducted by the financial advisor of the Board, Rothschild & Co IS Inc. ("Rothschild") in support of its fairness opinion, and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

4. It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Verso stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Plaintiff resides in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of Verso common stock and has held such stock since prior to the wrongs complained of herein.

10. Individual Defendant Dr. Robert K. Beckler has served as a member of the Board since January 2020.

11. Individual Defendant Randy J. Nebel has served as a member of the Board since November 2019 and is the President and Chief Executive Officer of the Company.

12. Individual Defendant Marvin Cooper has served as a member of the Board since January 2020.

13. Individual Defendant Nancy M. Taylor has served as a member of the Board since November 2019.

14. Individual Defendant Jeffrey E. Kirt has served as a member of the Board since January 2020.

15. Defendant Verso is incorporated in Delaware and headquartered at 8540 Gander Creek Drive, Miamisburg, Ohio 45342. The Company's common stock trades on the New York Stock Exchange under the symbol "VRS."

16. The defendants identified in paragraphs 10-14 are collectively referred to as the "Individual Defendants" or the "Board."

17. The defendants identified in paragraphs 10-15 are collectively referred to as the "Defendants."

**SUBSTANTIVE ALLEGATIONS**

**A.    The Proposed Transaction**

18. Verso produces and sells coated papers in North America. It operates through two segments, Paper and Pulp. The Company offers coated freesheet and coated groundwood, specialty, packaging, inkjet and digital, supercalendered, and uncoated freesheet papers; and bleached and unbleached market kraft pulp to manufacture printing, writing, and tissue products. Its paper products are used primarily in media and marketing applications, including catalogs, magazines, and commercial printing applications, such as high-end advertising brochures, annual reports, and direct-mail advertising; and specialty applications comprising flexible packaging, and label and converting. The Company was formerly known as Verso Paper Corp. and changed its name to Verso Corporation in January 2015. Verso was founded in 2006 and is headquartered in Miamisburg, Ohio.

19. On December 19, 2021, Verso announced that it had entered into the Proposed Transaction:

> MIAMISBURG, Ohio, Dec. 19, 2021 /PRNewswire/ -- Verso Corporation (NYSE: VRS) ("Verso") today announced that it has entered into a definitive merger agreement under which BillerudKorsnäs AB ("BillerudKorsnäs") will acquire all of the outstanding shares of Verso for a purchase price of $27 per share in

cash, or approximately $825 million[1]. Verso's Board of Directors, acting upon the recommendation of a special committee of Verso's Board, has unanimously approved and resolved to recommend approval of the merger by Verso's shareholders. The transaction is expected to close in the second quarter of 2022.

The consideration corresponds to a premium of approximately 35% compared to closing price of Verso's shares on December 17, 2021; a premium of approximately 26% compared to Verso's volume-weighted average share price during the last 30 trading days; and a premium of approximately 57% compared to the unaffected closing price of Verso's shares on July 9, 2021, the day prior to Atlas Holdings' submission of an unsolicited, non-binding proposal to acquire Verso for $20.00 per share in cash.

The acquisition of Verso is fully in line with BillerudKorsnäs' strategy to drive profitable growth in paperboard, and the ambition to expand into North America. BillerudKorsnäs aims to build one of the most cost-efficient and sustainable paperboard platforms in North America by converting several of Verso's assets into paperboard machines while maintaining Verso's position as a quality and cost leader in specialty and coated freesheet paper.

In making this acquisition, BillerudKorsnäs recognizes that Verso's strategic assets are positioned in a region with abundant and cost-effective fiber supply suitable for production of premium packaging materials. Verso's location also presents favorable export opportunities to both Asia and Europe. Verso will become the platform for BillerudKorsnäs' future expansion in North America and is expected to provide continuous growth opportunities over the next ten years and beyond. The combined company will be one of the largest providers of virgin fiber paper and packaging with a cost and quality advantage.

Randy Nebel, President and Chief Executive Officer of Verso, said, "With the support of our talented team, Verso has successfully streamlined our operations and reduced costs while strategically investing in projects to enhance our ability to support our customers. This transaction builds upon our considerable progress and better positions the combined company to invest in our North American manufacturing capability, provide high-quality paper products to customers and accelerate growth."

Mr. Nebel continued, "This agreement follows careful consideration and negotiation led by the special committee of our Board which was formed following receipt of the unsolicited proposal earlier this year. Our full Board believes this transaction maximizes value for

shareholders, who will receive a significant premium and immediate and certain value. In BillerudKorsnäs, we found a partner that shares our commitments to safety, quality, sustainability and innovation and is uniquely positioned to recognize the value of our business. We are grateful for BillerudKorsnäs' partnership over the past several months in reaching this compelling transaction, particularly amidst an uncertain and restrictive pandemic-related travel environment. We are excited to join forces with BillerudKorsnäs and benefit from enhanced opportunities as part of a larger, stronger organization."

Christoph Michalski, President and CEO of BillerudKorsnäs, commented, "The combination of BillerudKorsnäs' expertise in high-quality virgin fiber packaging materials and Verso's attractive assets creates an excellent platform for long-term profitable growth. We will obtain cost-effective production of coated virgin fiber material in the Midwestern United States. We also plan to sequentially transform part of the business into paperboard production while continuing to serve the U.S. customers. Our investments will create new U.S.-based jobs in a growing market and accelerate the transition from plastic-based packaging materials to renewable sources."

**Investing in Verso's Platform**

BillerudKorsnäs plans to convert Verso's largest facility, its Escanaba Mill, into a world-class, sustainable, fully integrated paperboard production site. One machine is estimated to be converted by 2025, a second machine by 2029, with a total capacity of around 1,200,000 tons (1,100 ktonnes). BillerudKorsnäs estimates that the investment for the conversion project will be up to approximately $1 billion[2].
In addition to continued paper production in Escanaba during the conversion, BillerudKorsnäs plans to continue operating the Quinnesec Mill, a cost and quality leader in graphic paper, specifically in coated freesheet and specialty papers. The mill has the capacity to produce about 430,000 tons (400 ktonnes) of graphic and specialty papers and 240,000 tons (200 ktonnes) of market pulp per year.

BillerudKorsnäs is committed to continuing to serve Verso's existing customers.

**Additional Transaction Details**

The acquisition will be effected pursuant to a definitive merger agreement under which Verso will merge with a wholly-owned

subsidiary of BillerudKorsnäs. The acquisition will be primarily financed by BillerudKorsnäs through increased debt and operating cash flow. Closing of the transaction is not subject to any financing condition.

A special meeting of Verso's shareholders is expected to be convened following the mailing to Verso's shareholders of a proxy statement for the transaction. The transaction is expected to close during the second quarter of 2022, subject to the approval of Verso's shareholders, as well as receipt of regulatory approvals and satisfaction of other customary closing conditions. Regulatory approvals include U.S. antitrust approval as well as approval from relevant state and federal energy regulatory authorities in the U.S.

**Advisors**
Rothschild & Co serves as exclusive financial advisor and Kirkland & Ellis LLP serves as legal counsel to Verso. BofA Securities serves as exclusive financial advisor, Skadden, Arps, Slate, Meagher & Flom LLP serves as U.S. legal counsel and Cederquist serves as Swedish legal counsel to BillerudKorsnäs.

\* \* \*

20. The Board has unanimously approved the Proposed Transaction. It is therefore imperative that Verso's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

B.   **The Materially Incomplete and Misleading Proxy Statement**

21. On January 21, 2022, Verso filed the Proxy Statement with the SEC in connection with the Proposed Transaction. The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed

7

decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

22. The Proxy Statement fails to provide material information concerning financial projections by Verso management and relied upon by Rothschild in its analyses. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and the financial advisor with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that Verso management provided to the Board and the financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

23. For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: Adjusted EBITDA, Operating Cash Flow, and Total Cash Flow, but fails to provide all line items used to calculate some of the metrics and/or a reconciliation of the non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

24. When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate

suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

25. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

26. Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Proxy Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Rothschild's Financial Analyses*

27. With respect to Rothschild's *Selected Public Company Analysis*, the Proxy Statement fails to disclose the metrics and multiples for the companies selected by Rothschild in the analysis.

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

28. With respect to Rothschild's *Selected Precedent Transactions Analysis*, the Proxy Statement fails to disclose the individual multiples and metrics for the transactions observed by Rothschild in the analysis.

29. With respect to Rothschild's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the terminal values for the Company; (ii) the inputs and assumptions underlying the use of the range of perpetuity growth rates of -2.75% to -0.75%; (iii) the inputs and assumptions underlying the range of illustrative discount rates ranging from 12.25% to 15.25%; (iv) the Company's weighted average cost of capital; (v) Verso's net debt as of September 30, 2021; and (vi) the number of fully diluted outstanding shares of Verso's common stock.

30. In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

31. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

32. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or

misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

33. Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, financial analysis that were prepared by Rothschild and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

34. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

35. Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives and the Company's financial projections.

36.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

37.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

38.     The Individual Defendants acted as controlling persons of Verso within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of Verso, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Verso, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

39.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

40.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Verso, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations

alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy Statement.

41. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

42. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

43. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

44. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with,

consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: January 21, 2022

**MELWANI & CHAN LLP**

By: /s *Gloria Kui Melwani*
Gloria Kui Melwani (GM5661)
1180 Avenue of Americas, 8th Fl.
New York, NY 10036
Telephone: (212) 382-4620
Email: gloria@melwanichan.com

*Attorneys for Plaintiff*